The JEAN ANDERSON HIERARCHY OF AGENTS and Jean Anderson

v.

ALLSTATE LIFE INSURANCE COMPANY, Allstate Group of Life Insurance Companies, Lincoln Benefit Life Company, Sears, Roebuck and Co. and Surety Life Insurance Company

No. CIV.A. 97–5175.

United States District Court, E.D. Pennsylvania.

April 6, 1998.

Fredric S. Karpf, Thomas G. Russomano, The Margolis Law Group, P.C., Verona, NJ, for Plaintiffs.

Frank A. Gerolamo, Gregory S. Capps, German, Gallagher and Murtagh, Philadelphia, PA, for Defendants.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

By way of the motion now before the Court, Defendants move to dismiss Plaintiffs' Complaint pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons which follow, the motion shall be granted in part and denied in part.

### Background

In 1990, plaintiff Jean Anderson entered into an Executive Sales Director ("ESD") contract with defendant Surety Life Insurance Company, a wholly owned subsidiary of defendant Allstate, whereby Anderson was authorized to sell Surety's insurance products and staff an agency to sell those products in the Pennsylvania and New Jersey markets. (Pl's complaint, ¶ 11). At about this same time, Surety hired Walter Anderson, plaintiff's husband, as its regional director for the Pennsylvania and New Jersey markets. (Pl's Complaint, ¶ 10). Plaintiff contends that based upon her ESD contract with Surety, she began recruiting agents to staff the Jean Anderson Hierarchy of Agents ("Hierarchy") to market Surety's products, eventually recruiting some 428 agents. (Complaint, ¶ s12–13). Plaintiff contends that she was an outstanding Executive Sales Director for Surety and that the company recognized her as such by, *inter alia*, naming her the ESD of the Year, appointing her to the executive council, and rewarding her with numerous company-sponsored trips to Mexico, Switzerland and Indonesia. (Complaint, ¶ s 13–14).

Despite plaintiff's outstanding performance however, Surety refused to pay plaintiff her full and override commissions and earned persistency bonuses ostensibly because her husband was a Regional Director. (Com-

plaint, ¶ 15). In August, 1996, Surety terminated both Walter and Jean Anderson. Plaintiffs believe that the terminations were retaliatory for Walter Anderson's advising Surety of inherent defects in certain of its insurance products "and as a coercive measure to suppress exposure of the foregoing defects..." (Complaint, ¶ s 17–21). Following Walter Anderson's assignment of all of his rights, title and interest in and to any and all commissions, bonuses, awards, and other compensation due him from Surety, Plaintiffs brought this suit in August, 1997 for breach of contract, breach of implied covenants of good faith and fair dealings in the ESD and Agent's contracts, negligence, conversion, intentional infliction of emotional distress and for violations of the anti-discrimination provisions of 29 U.S.C. § 206(d)(1) and 42 U.S.C. § 2000e.

### Standards Governing 12(b)(6) Motions

It has long been held that the issue of the sufficiency of a pleading may be raised by the filing of a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). In resolving a Rule 12(b)(6) motion, the courts are to primarily consider the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir.1990). In so doing, the court must accept as true the facts alleged in the complaint, together with all reasonable inferences that can be drawn therefrom and construe them in the light most favorable to the plaintiff. *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3rd Cir.1990); *Hough/Loew Associates, Inc. v. CLX Realty Co.*, 760 F.Supp. 1141 (E.D.Pa.1991). The court's inquiry is directed to whether the allegations constitute a statement of a claim under Rule 8(a) and whether the plaintiff has a right to any relief based upon the facts pled. Dismissal under Rule 12(b)(6) for failure to state a claim is therefore limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved. *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3rd Cir.1988); *Angelastro v. Prudential–Bache*

*Securities, Inc.*, 764 F.2d 939, 944 (3rd Cir. 1985), *cert. denied*, 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985).

### Discussion

#### A. Dismissal of Allstate Defendants, Lincoln Benefit Life Company and Sears, Roebuck and Company.

Defendants first move to dismiss the Fourth, Fifth and Tenth Counts of the complaint against Allstate Life Insurance Company, Allstate Group of Life Insurance Companies, Lincoln Benefit Life Company and Sears, Roebuck and Company on the grounds that the complaint contains no factual allegations against them. In response, plaintiffs contend that their complaint clearly apprises each of these defendants of the causes of action against them as they allege that Surety shares a corporate relationship with each.

■ As a general rule, a parent corporation, like any stockholder, is not normally liable for the wrongful acts or contractual obligations of a subsidiary even if or simply because the parent wholly owns the subsidiary. *Bell Atlantic v. Hitachi Data Systems*, 849 F.Supp. 702, 707 (N.D.Cal.1994); *United National Records, Inc. v. MCA, Inc.*, 616 F.Supp. 1429, 1432 (N.D.Ill.1985); *Nobers v. Crucible, Inc.*, 602 F.Supp. 703, 706 (W.D.Pa. 1985). However, where a shareholder or parent so dominates the activities of a corporation that it is necessary to treat the dominated corporation as an agent or "alter ego" of the principal, liability may be imposed. *Esmark, Inc. v. N.L.R.B.*, 887 F.2d 739, 753 (7th Cir.1989); *Selser v. Pacific Motor Trucking Co.*, 770 F.2d 551, 554 (5th Cir. 1985). *See Also: Publicker Industries, Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1069 (3rd Cir.1979).

■ Relevant factors to consider in determining whether the corporate "veil" should be pierced include:

Failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of cor-

porate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders .... Gross undercapitalization is also a factor.

*Nobers v. Crucible, supra,* citing *American Bell, Inc. v. Federation of Telephone Workers of Pennsylvania,* 736 F.2d 879, 886 (3rd Cir.1984) and *United States v. Pisani,* 646 F.2d 83, 88 (3rd Cir.1981). *See Also: Parker v. Bell Asbestos Mines, Ltd.,* 607 F.Supp. 1397, 1399–1400 (E.D.Pa.1985).

▮ In this case, while demanding judgment against all defendants jointly and severally for discrimination in Counts Four and Five and for intentional infliction of emotional distress in Count Ten, plaintiffs' only allegations against Allstate, Lincoln Benefit and Sears are as to the corporate relationships between those defendants and Surety. Specifically, Surety and Lincoln Benefit are alleged to be sister corporations (sharing the same officers and Board of Directors) and wholly owned subsidiaries of Allstate while Allstate is alleged to have been a subsidiary of Sears until 1992. (Complaint, ¶ s3–9). No other facts nor any acts of wrongdoing are alleged against Allstate, Lincoln Benefit or Sears and it thus appears that plaintiffs seek only to hold these defendants liable for the alleged actions of Surety. Thus, since there are no factual averments upon which this Court could find that Surety was so dominated by the activities of the other defendant corporations that it may be held to be their agent or "alter ego," there is no basis upon which Allstate, Lincoln Benefit or Sears can be held liable for Surety's acts. We thus find dismissal of plaintiffs' complaint as against these defendants to be proper and defendants' motion to dismiss as to Allstate, Lincoln Benefit and Sears shall be granted. *See: McCarthy v. KFC Corp.,* 607 F.Supp. 343, 346 (W.D.Ky.1985); *Gutierrez v. Vergari,* 499 F.Supp. 1040, 1052 (S.D.N.Y.1980).

### B. Dismissal of Counts Four and Five as to all Defendants.

Defendants next move to dismiss Counts Four and Five, which purport to state causes of action for violations of the Fair Labor Standards Act/Equal Pay Act ("FLSA/EPA"), 29 U.S.C. § 206(d)(1) and Title VII, 42 U.S.C. § 2000e–2(a) for the rea-

son that these statutes apply only to employees—not independent contractors such as plaintiffs.

▮ Defendants are correct in their assertion that the Court's jurisdiction under these statutes may be invoked only in actions involving an employer and an employee. *Wright v. State Farm Mutual Automobile Insurance Co.,* 911 F.Supp. 1364, 1371 (D.Kan.1995); *Lazarz v. Brush Wellman, Inc.,* 857 F.Supp. 417, 422 (E.D.Pa.1994); *Russell v. Belmont College,* 554 F.Supp. 667, 674 (M.D.Tenn.1982). An "employer" for purposes of the Fair Labor Standards Act/ Equal Pay Act is defined as including "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization." 29 U.S.C. § 203(d). An "employee" under the FLSA/ EPA, with certain limited exceptions not applicable here, "means any individual employed by an employer." 29 U.S.C. § 203(e)(1).

Similarly, under Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year and any agent of such a person..." 42 U.S.C. § 2000e(b). As under the FLSA, an "employee" under Title VII is (also with certain exceptions not applicable to this case) "an individual employed by an employer." 42 U.S.C. § 2000e(f).

▮ To resolve defendants' motion for dismissal we therefore must, as a threshold matter, first determine whether an employer-employee relationship existed between the parties. *See, e.g., Lattanzio v. Security National Bank,* 825 F.Supp. 86, 88 (E.D.Pa. 1993). In so doing, we note that merely labelling the worker as an employee or independent contractor is not dispositive and the question of whether a particular defendant is an employer is generally a question of law. *Welch v. Laney,* 57 F.3d 1004, 1011 (11th Cir.1995); *Aviles v. Kunkle,* 765 F.Supp. 358,

363 (S.D.Tex.1991), vacated on other grounds, 978 F.2d 201 (5th Cir.1992), citing *Donovan v. Tehco, Inc.* 642 F.2d 141, 143 (5th Cir.1981).

The law is now clear that where the statute does not helpfully define the term "employee," courts are to use a common-law agency test to determine employee status. *Nationwide Mutual Insurance Co. v. Darden,* 503 U.S. 318, 322, 112 S.Ct. 1344, 1348, 117 L.Ed.2d 581 (1992). Under this test, all of the incidents of the relationship must be assessed and weighed with no one factor being decisive; the following factors are to be considered:

(1) the hiring party's right to control the manner and means by which the product is accomplished;

(2) the skill required;

(3) the source of the instrumentalities and tools;

(4) the location of the work;

(5) the duration of the relationship between the parties;

(6) whether the hiring party has the right to assign additional projects to the hired party;

(7) the extent of the hiring party's discretion over when and how long to work;

(8) the method of payment;

(9) the hired party's role in hiring and paying assistants;

(10) whether the work is part of the regular business of the hiring party;

(11) whether the hiring party is in business;

(12) the provision of employee benefits; and

(13) the tax treatment of the hired party.

*Darden,* 503 U.S. at 322–24, 112 S.Ct. at 1348–1349; *Walker v. Correctional Medical Systems,* 886 F.Supp. 515, 520 (W.D.Pa.1995).

In application of the preceding principles, we first note that both Title VII and the FLSA/EPA state only that an employee "is an individual employed by an employer." As the Supreme Court in *Darden* held this very same definition to be completely circular and explanatory of nothing (albeit in the context of ERISA, 29 U.S.C. § 1002(6)), we conclude that the common law agency test should be applied in this case. In so doing, however, we find that, with the exception of the language of the Executive Sales Director Contract which decrees the Executive Sales Director to have the status of independent contractor with authority to (with company approval), engage assistant managers and associates to aid in the development of the company's business, there is nothing of record from which this Court can apply the thirteen factors of the common law agency test. We shall therefore deny the motion to dismiss Counts Four and Five of the complaint without prejudice to defendants' right to re-visit this argument following the development of a complete record through a motion for summary judgment, if appropriate.

**C. Dismissal of Plaintiffs' Punitive Damages and Emotional Distress Claims.**

Defendants also seek the dismissal of those claims for punitive damages and damages for emotional suffering and distress which are set forth in the First and Sixth Counts of the plaintiffs' Complaint as well as those claims for punitive damages which are asserted in the wherefore clauses of each count of the complaint. While the Pennsylvania Supreme Court still has yet to formally recognize the tort of intentional infliction of emotional distress, it has been impliedly acknowledged by that Court, the state Superior Court and the Third Circuit as requiring four elements: (1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) the conduct must cause emotional distress; and (4) the distress must be severe. *Kazatsky v. King David Memorial Park,* 515 Pa. 183, 527 A.2d 988, 991 (1987); *Stouch v. Brothers of Order,* 836 F.Supp. 1134, 1144–1145 (E.D.Pa.1993), citing, *inter alia, Williams v. Guzzardi,* 875 F.2d 46, 51 (3rd Cir.1989); Restatement (Second) of Torts § 46. Liability will only be found where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency as to be regarded as atrocious and utterly intolerable in a civilized community. *Stouch, supra.* at 1145; *Malia v. RCA Corporation,* 690 F.Supp. 334, 336 (M.D.Pa.1988); *Rittenhouse Regency Affiliates v. Passen,* 333 Pa.Super. 613, 615, 482

A.2d 1042, 1043 (1984), citing, *inter alia, Martin v. Little Brown and Co.*, 304 Pa.Super. 424, 432, 450 A.2d 984, 988 (1981).

■ Moreover, as a general rule, damages for emotional disturbance and distress are ordinarily not allowed in breach of contract cases, except in those situations where the emotional distress is accompanied by bodily harm or where the breach is of such a kind that serious emotional disturbance was a particularly likely result. *Rodgers v. Nationwide Mutual Insurance Co.*, 344 Pa.Super. 311, 319–320, 496 A.2d 811, 815 (1985); *Rittenhouse, supra*, 482 A.2d at 1043, both citing Restatement (Second) of Contracts § 353 (1981).

■ Punitive damages, in turn, are awarded under Pennsylvania law to punish a defendant for outrageous conduct, which is defined as an act which, in addition to creating actual damages, also imports insult or outrage and is committed with a view to oppress or is done in contempt of plaintiffs' rights. *Klinger v. State Farm Mutual Automobile Insurance Co.*, 115 F.3d 230, 235 (3rd Cir.1997), citing *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 464 A.2d 1243, 1263 (1983). In order to prove entitlement to punitive damages under Pennsylvania law, a plaintiff must prove malice, vindictiveness and a wholly wanton disregard for the rights of others. *Advanced Medical, Inc. v. Arden Medical Systems, Inc.*, 955 F.2d 188, 202 (3rd Cir.1992). Three factors can be considered when awarding punitive damages: (1) the character of the act; (2) the nature and extent of the harm caused; and (3) the wealth of the defendant. *Donaldson v. Bernstein*, 104 F.3d 547, 557 (3rd Cir.1997).

■ In this case, the gravamen of plaintiffs' claims for punitive and emotional distress damages is defendant Surety's alleged breach of the Executive Sales Director and Agent Sales agreements, Surety's purported conversion of Andersons' agents and its refusal to pay Jean Anderson equal wages ostensibly because of her gender. In essence, the basis for plaintiffs' emotional distress claims is nothing more than a breach of contract. There being no allegations that the emotional distress was accompanied by bodily harm or that the breach was of such a kind that serious emotional disturbance was a par-

ticularly likely result, we can reach no other conclusion but that plaintiffs have failed to state a claim for emotional distress upon which relief may be granted under the law.

■ Moreover, we cannot find that the conduct alleged rises to the level of outrageousness contemplated by the above-referenced cases to sustain a claim for either emotional distress or punitive damages. For these reasons then, defendants' motion to dismiss the claims for punitives and emotional distress damages shall be granted.

### D. Dismissal of the claims of the Jean Anderson Hierarchy of Agents against Defendants.

Finally, Defendants assert that, as an unincorporated association, the Jean Anderson Hierarchy of Agents has no capacity to bring this suit and thus all of the claims brought against them by the Hierarchy must be dismissed. For their part, Plaintiffs concede that they could have more explicitly pled the capacity in which the Hierarchy is entitled to sue and request leave to amend their complaint accordingly.

■ In actions brought in a United States District Court where jurisdiction is based on diversity, the capacity of persons to sue or be sued is determined by the law of the state in which the district court sits. *Underwood v. Maloney*, 256 F.2d 334, 341 (3rd Cir.1958); *Kenrich Corporation v. Miller*, 256 F.Supp. 15, 17 (E.D.Pa.1966). *See Also: Payne v. Sigma Phi Epsilon*, 569 F.Supp. 422 (N.D.W.Va.1983). Indeed, under Fed.R.Civ.P. 17(b):

The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing

for or against it a substantive right existing under the Constitution or laws of the United States, and (2) that the capacity of a receiver appointed by a court of the United States is governed by Title 28, U.S.C. Sections 754 and 959(a).

Suits by or against unincorporated associations in Pennsylvania can be maintained only as provided by Rules 2152 and 2153 of the Pennsylvania Rules of Civil Procedure. *Underwood, supra,* 256 F.2d at 342. It is Pa. R.C.P. 2152 which governs actions instituted by unincorporated associations. Specifically, that rule states:

> An action prosecuted by an association shall be prosecuted in the name of a member or members thereof as trustees ad litem for such association. An action so prosecuted shall be entitled "X Association by A and B, Trustees ad Litem" against the party defendant.

■ Applying the foregoing to the case at hand, we note that while the plaintiffs' complaint avers that Jean Anderson was at all relevant times the principal of the Jean Anderson Hierarchy of Agents, an unincorporated association of the Commonwealth of Pennsylvania, it does not aver that this suit is being prosecuted in the name of a trustee ad litem for the association. It is therefore obvious that the complaint fails to satisfy the requirements for pleading a cause of action on behalf of an unincorporated association under Pennsylvania law and that defendants' motion to dismiss on this ground is properly granted. We are, however, also mindful of the fact that requests to amend are to be liberally granted under Fed.R.Civ.P. 15 provided that amendment would not be futile and prejudice will not inure to the non-moving party. *See, e.g., Dole v. Arco Chemical Co.,* 921 F.2d 484, 486–487 (3rd Cir.1990); *U.S. v. Keystone Sanitation Co., Inc.,* 903 F.Supp. 803, 814 (M.D.Pa.1995). As we cannot find that amendment would be futile or that the defendant would suffer any prejudice by the filing of an amended complaint, plaintiffs shall be given leave to amend this claim under Fed.R.Civ.P. 15.

An appropriate order follows.

## ORDER

AND NOW, this 6th day of April, 1998, upon consideration of Defendants' Motion to Dismiss the Plaintiffs' Complaint, it is hereby ORDERED that the Motion is GRANTED in PART and DENIED in PART and Plaintiffs' Claims against Allstate Life Insurance Company, Allstate Group of Life Insurance Companies, Lincoln Benefit Life Company and Sears, Roebuck and Co. and claims for emotional distress and punitive damages are DISMISSED for the reasons set forth in the preceding Memorandum.

IT IS FURTHER ORDERED that the claims of Plaintiff Jean Anderson Hierarchy of Agents are DISMISSED with leave granted to the said Plaintiff to file an Amended Complaint conforming to the pleading requirements of Fed.R.Civ.P. 17 and Pa.R.C.P. 2152 within twenty (20) days of the date of this Order.