UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ELAINE L. CHAO, SECRETARY OF
LABOR, UNITED STATES
DEPARTMENT OF LABOR,
              *Plaintiff-Appellant,*

              v.

MID-ATLANTIC INSTALLATION
SERVICES, INCORPORATED; COMCAST
CABLEVISION OF MARYLAND, L.P.,
d/b/a Comcast Cablevision of
Baltimore County; COMCAST
CABLEVISION OF HARFORD COUNTY,
INCORPORATED; COMCAST
CABLEVISION OF HOWARD COUNTY,
INCORPORATED; M/A
TELECOMMUNICATIONS, INCORPORATED;
COMCAST CABLE COMMUNICATIONS,
INCORPORATED; COMCAST CABLE OF
MARYLAND, INCORPORATED,
              *Defendants-Appellees.*

No. 00-2263

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CA-97-4238-S)

Argued: June 6, 2001

Decided: July 2, 2001

Before WIDENER, NIEMEYER, and LUTTIG, Circuit Judges.

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Ellen Randi Edmond, UNITED STATES DEPART-MENT OF LABOR, Washington, D.C., for Appellant. Douglas Michael Topolski, MCGUIRE WOODS, L.L.P., Baltimore, Maryland; James Joseph Sullivan, Jr., KLETT, ROONEY, LIEBER & SCHORLING, Philadelphia, Pennsylvania, for Appellees. **ON BRIEF:** Henry L. Solano, Solicitor of Labor, Steven J. Mandel, Associate Solicitor of Labor, Paul L. Frieden, Counsel for Appellate Litigation, Catherine Oliver Murphy, Regional Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Appellant. Elena D. Marcuss, MCGUIRE WOODS, L.L.P., Baltimore, Maryland, for Appellees Mid-Atlantic, et al. Stephen C. Trevisan, KLETT, ROONEY, LIEBER & SCHORLING, Philadelphia, Pennsylvania, for Appellees Comcast, et al.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

The Secretary of the United States Department of Labor ("the Secretary") brought this action alleging that M/A Telecommunications, Inc. ("MAT") and Comcast Cablevision ("Comcast") violated the Fair Labor Standards Act ("FLSA") by failing to pay overtime wages to cable installers. The district court granted summary judgment to MAT and Comcast, and the Secretary appeals. We affirm on the reasoning of the district court.

I.

Comcast, a cable television provider, entered into a contract with MAT for the installation and repair of cable equipment on the prem-

ises of Comcast's customers. MAT contracts with individual installers ("the Installers") to perform the installation and repair work. The contract between MAT and the Installers ("the Contract") repeatedly refers to the Installers as independent contractors. J.A. 290 ("Do not perform services or sign a contract with [MAT] unless you consider yourself an Independent Contractor."); J.A. 297 ("It is hereby agreed and acknowledged . . . that Contractor shall, at all times, function as an independent contractor and not as [MAT's] employee.").

Despite the explicit language of the Contract and other indicia that the Installers are independent contractors, the Secretary brought this action against Comcast and MAT, alleging that the Installers are employees within the meaning of the FLSA and that they are therefore entitled to overtime pay. The district court granted summary judgment to Comcast and MAT because it concluded that the Installers are independent contractors not covered by the FLSA.

## II.

The requirements of the FLSA apply only to employees. The statute defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). In turn, the FLSA defines "to employ" as "to suffer or permit to work," 29 U.S.C. § 203(g), and an "employer" as "any person acting . . . in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d).

Recognizing that these definitions do little to "solve[ ] problems as to the limits of the employer-employee relationship under the [FLSA]," the Supreme Court has explained that courts must determine whether, as a matter of "economic realit[y]," an individual is an employee or an independent contractor in business for himself. *Rutherford Food Corp.* v. *McComb*, 331 U.S. 722, 728 (1947). Several factors guide this inquiry:

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;

> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;

(3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;

(4) whether the service rendered requires a special skill;

(5) the degree of permanency and duration of the working relationship;

(6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Secretary of Labor* v. *Lauritzen*, 835 F.2d 1529, 1535 (7th Cir. 1987).

The district court applied the "economic reality" test and held that the Installers are independent contractors rather than employees of MAT. J.A. 10-27. The court concluded that the bulk of relevant considerations weigh heavily in favor of independent contractor status, while only the sixth factor favors the conclusion that the Installers are employees. *See Lauritzen*, 835 F.2d at 1534 (explaining that courts must consider the totality of the circumstances and that no single factor in the "economic reality" test is dispositive).

A.

First, the district court held that MAT does not exercise the type of control over "the manner in which the work is to be performed," *id.* at 1535, necessary to "characterize the relationship between the Installers and MAT as one of employee/employer." J.A. 21. Although MAT assigns daily routes to the Installers and requires them to report their progress to a dispatcher periodically, the Installers are free to complete the jobs within their routes in whatever order they wish, J.A. 332-33; to attend to personal affairs or conduct other business during the day, J.A. 326, 385-86, 399; to choose and manage their own employees to help them complete their work orders, J.A. 290; and to work either independently or together with other Installers, J.A. 527-30. Thus, the district court concluded that the manner in which the Installers complete their work is left to their broad discretion and business judgment, which suggests that they are independent contractors.

Moreover, the district court rejected the Secretary's argument that MAT's practice of "backcharging" Installers for failing to comply with various local regulations or with technical specifications demonstrates the type of control characteristic of an employment relationship. The court explained that "requiring the Installers to meet MAT's and Comcast's installation specifications is entirely consistent with the standard role of a contractor who is hired to perform highly technical duties." J.A. 17. *See Dole* v. *Amerilink Corp.*, 729 F. Supp. 73, 76 (E.D. Mo. 1990) (explaining that specifications and quality control "inhere[ ] in any subcontractor relationship"). Further, the court noted that "[i]t is common in contractual relationships" — but not in salaried employment — "to withhold money if work is not done correctly." J.A. 18.

### B.

As to the second factor, the district court held that the Installers have an "opportunity for profit or loss" that is indicative of independent contractor status. *Lauritzen*, 835 F.2d at 1535. An Installer's net profit or loss depends on his skill in meeting technical specifications, thereby avoiding backcharges; on the business acumen with which the Installer makes his required capital investments in tools, equipment, and a truck; and on the Installer's decision whether to hire his own employees or to work alone. Moreover, the district court explained that "Installers can control their own profits and losses by agreeing to work more or fewer hours and, more importantly, by improving their technique so that they can service more customers faster." J.A. 21.

The district court recognized that the Installers are not *solely* in control of their profits or losses, since they cannot unilaterally determine how many Comcast customers they will service on a given day or the rate at which they are paid for each job. Yet the court concluded that the Installers are no less in control of their net profits as a result of these variables than typical independent contractors, "whose income [also] derives from how much work someone else wants to give them and at what rate they will be paid." J.A. 22.

### C.

The district court held that the Installers' "investment in equipment" and their right to employ workers weigh strongly in favor of

concluding that they are independent contractors. *Lauritzen*, 835 F.2d at 1535. The contract between MAT and the Installers requires the Installers to supply their own trucks (equipped with 28-foot ladders), specialized tools, uniforms, and pagers. In addition, the Installers are responsible for their own liability and automobile insurance, and for "withholding [their] own and [their] employees' federal, state and local taxes as well as any payments due for social security self-employment taxes, unemployment and workman's compensation." J.A. 290. Thus, the Installers incur significant expenses "of a type not normally borne by employees." J.A. 23. *See Amerilink*, 729 F. Supp. at 76 (explaining that such expenditures are typically expected of independent contractors but not of employees, who are given necessary tools by an employer).

## D.

The district court likewise concluded that the degree of skill required to install and repair cable equipment favors independent contractor status. The court reasoned that the skills of cable installers are akin to those of carpenters, construction workers, and electricians, who are usually considered independent contractors. J.A. 23. *See Amerilink*, 729 F. Supp. at 77 (stating that cable installers "possess the special skills of carpenters and electricians").

## E.

As to the "degree of permanency and duration of the working relationship" between MAT and the Installers, *Lauritzen*, 835 F.2d at 1535, the district court concluded that "[w]hile it is certainly possible to establish a long-term relationship with MAT, implying employment, it is not necessarily the norm, nor is it required." J.A. 24. Thus, the district court held that this factor is neutral.

## F.

Finally, the district court concluded that because MAT is in the business of brokering cable installation to cable providers, the Installers are integral to MAT's business. However, the court held that this factor, standing alone, does not create an employment relationship

between the Installers and MAT. J.A. 26. *See Amerilink*, 729 F. Supp. at 77 (explaining that the importance of cable installers to the business of a broker "does not alter the overall impression that the Installers are economically independent from [the broker]").

## III.

We review the district court's legal conclusion that the Installers are independent contractors de novo, *Icicle Seafoods, Inc.* v. *Worthington*, 475 U.S. 709, 714 (1986), viewing disputed material facts in the light most favorable to the Secretary, the non-moving party, on summary judgment, *Kubicko* v. *Ogden Logistics Servs.*, 181 F.3d 544, 551 (4th Cir. 1999). After reviewing the parties' briefs and the applicable law, and having had the benefit of oral argument, we conclude that the district court correctly granted summary judgment to MAT and Comcast,\* and we affirm on the reasoning of the district court. *See Herman* v. *Mid-Atlantic Installation Servs., Inc.*, No. S-97-4238 (D. Md. July 27, 2000).

## *CONCLUSION*

For the reasons stated herein, the judgment of the district court is affirmed.

*AFFIRMED*

---

\*We agree with the district court that "[b]ecause MAT cannot be considered the Installers' employer, neither can Comcast, whose only relationship with them is via its contract with MAT." J.A. 18.